UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARCEL PIERRE,

        Plaintiff,

    v.

STATE OF NEW YORK DEPARTMENT
OF CORRECTIONS AND COMMUNITY
SUPERVISION, *et al.*,

        Defendants.

21-CV-163-LJV-MJR
DECISION & ORDER

---

On January 27, 2021, the *pro se* plaintiff, Marcel Pierre, commenced this action under 42 U.S.C. § 1983. Docket Item 1. Pierre says that defendants Nathan Coffey, Shawn Dupuis, and Daniel J. Fahey, M.D., violated his Fourth and Eighth Amendment rights during multiple searches at the Wyoming Correctional Facility ("Wyoming") and the Wyoming County Community Health System Hospital ("Wyoming Hospital"). *Id.* Pierre also says that Wyoming County is liable for Dr. Fahey's conduct under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), because Dr. Fahey violated Pierre's rights pursuant to a Wyoming County policy or custom. *Id.*

On September 29, 2021, this Court screened Pierre's complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Docket Item 7. In that screening order, the Court determined that Pierre's invasion of privacy, sexual abuse, and municipal liability claims, as well as his inadequate medical care claim against Dr. Fahey, could proceed to service. *Id.* at 21. The Court found that Pierre's excessive force and conspiracy claims, as well as his inadequate medical care claim against unnamed defendants, were

subject to dismissal but gave him leave to amend those claims.[1]  *Id.*  Pierre did not file an amended complaint.

On March 8, 2022, Wyoming County moved to dismiss Pierre's municipal liability claim.  Docket Item 22.  Pierre responded to the motion to dismiss on October 3, 2022,[2] Docket Item 30, and Wyoming County replied on October 21, 2022, Docket Item 32.

For the reasons that follow, Wyoming County's motion to dismiss will be granted unless Pierre files an amended complaint correcting the deficiencies noted below.

### **FACTUAL BACKGROUND**[3]

At about 10 p.m. on February 18, 2020, Wyoming correction officers randomly selected Pierre to be pat frisked.  Docket Item 1 at 4.  The officers did not discover any

---

[1] This Court also dismissed Pierre's Fourteenth Amendment claim and his claims against the New York State Department of Corrections and Community Supervision ("DOCCS") without leave to amend.  Docket Item 7 at 21.

[2] In his response to the motion to dismiss, Pierre also cross-moved "to amend the caption of the complaint [to] reflect the John Doe doctor in the matter."  Docket Item 30 at 2.  Pierre, who "is now aware [of] the actual doctor who[] performed the illegal cavity search," requests that this Court "amend the caption" of the case to reflect that Dr. Fahey has been identified as the John Doe doctor defendant.  *Id.* at 5.

Pierre originally named DOCCS, Wyoming Hospital, two John Doe correction officers, and a John Doe doctor as defendants in this case.  Docket Item 1.  When this Court screened Pierre's complaint, it also directed Wyoming County to provide the name of the John Doe doctor pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam).  Docket Item 7 at 19-20.  Wyoming County then identified Dr. Fahey as the John Doe doctor named in the complaint, *see* Docket Item 15, and Pierre's complaint and the case caption were amended without further order, *see* Docket Item 7 at 19-20.  Because Pierre's complaint already has been amended to include Dr. Fahey as a defendant, Pierre's motion to amend is denied as moot.

[3] The following facts are taken from the complaint, *see* Docket Item 1, and accepted as true.  On a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."

2

contraband during the pat frisk, but Pierre nevertheless "was [] directed to go to a strip frisk room." *Id.* After Pierre "complained that [the strip frisk] was an intrusion and that [he] had done nothing wrong, the officers began to ass[ault Pierre] by striking [him] in the face." *Id.*

Pierre then turned over a "stick" of marijuana to the officers. *Id.* Immediately after that, the officers "jumped on [Pierre]" and again physically assaulted him. *Id.* Although the officers did not find anything during the strip search, Pierre nevertheless was "placed under a stool[] watch to determine [whether he] had consumed" any other contraband. *Id.*

The "stool[] watch" did not uncover any contraband, but the officers falsely stated that Pierre "had consumed something." *Id.* at 4-5. So Pierre was transferred to Wyoming Hospital for yet another search. *Id.* at 5.

After he arrived at the hospital, Pierre was "taken into a small room accompanied by [two correction] officers." *Id.* At that point, a nurse took Pierre's vital signs before Dr. Fahey came in to perform a "colon check." *Id.* Although Pierre protested that the "body cavity search[]" was "a violation of [his] religious rights and unconstitutional," Dr. Fahey told the correction officers to "roll [Pierre] on his side and hold him down." *Id.* Pierre "began to squirm and tr[ied] to prevent the violation," but that resistance proved futile because he was "still in cuffs[,] chain[s,] and shackles." *Id.*

Dr. Fahey "then stated[,] 'Don't worry[,] you might even like this[—]open up wide'" before he "place[d] his fingers inside [Pierre's] anal cavity." *Id.* Dr. Fahey proceeded to

---

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

"mov[e] [his fingers] around" and asked Pierre if he could "feel that." *Id.*  Pierre "was humiliated and in tears" as the search continued.  *Id.*  Dr. Fahey then inserted a "blunt object" into Pierre's anal cavity, causing Pierre "severe pain." *Id.* at 6.  Although Pierre "screamed for the abuse to stop," the search continued until Dr. Fahey determined that he was in "deep enough," that there was "nothing in there," and that Pierre was "clean as a whistle."  *Id.*  After the search, Pierre was taken back to Wyoming and placed in the Special Housing Unit.  *Id.*

According to Pierre, this search was conducted under a Wyoming County "custom, policy, and[/]or practice of failing to adequately train, supervise[,] and discipline its employees and [] agents."  *Id.* at 9.  Pierre therefore maintains that Wyoming County "customs and policies" were the "moving force behind the constitutional violations" that he suffered at Wyoming Hospital.  *Id.*

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The court accepts as true all well-pleaded factual allegations in the complaint" and "draws all reasonable inferences in favor of the nonmoving party."  *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) (citation and internal quotation marks omitted).  But courts "are not bound to accept as true a legal conclusion couched as a factual allegation," nor will

4

"a formulaic recitation of the elements of a cause of action" suffice.  *Twombly*, 550 U.S. at 555.

## DISCUSSION

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

A municipality cannot be held liable under section 1983 unless the challenged action was undertaken pursuant to a municipal policy or custom.  *See Monell*, 436 U.S. at 694.  To state a claim under *Monell*, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).  And to satisfy that first element, "a plaintiff must allege the existence of a formal policy which is officially endorsed by the municipality, or a practice so persistent and widespread that it constitutes a custom or usage of which supervisory authorities must have been aware, or that a municipal custom, policy, or usage can be inferred from evidence of deliberate

5

indifference of supervisory officials to such abuses."[4] *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13 (2d Cir. 2015) (summary order).

"Absent an express municipal policy, [a] plaintiff may prove a municipal custom, policy[,] or practice in several ways." *Ramos v. County of Suffolk*, 2009 WL 10708571, at *2 (E.D.N.Y. Sept. 8, 2009). One way is to demonstrate a policymaker's "acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (citation omitted). "In limited circumstances, a municipality may also be held liable for its failure to train," supervise, or discipline its employees. *See Hernandez v. United States*, 939 F.3d 191, 206 (2d Cir. 2019) (citation and internal quotation marks omitted); *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).

But "[w]here plaintiffs seek to hold a municipality liable under a theory of failure to [train,] supervise[,] or discipline, . . . they must also show that the municipal policymaker acted with deliberate indifference." *Pipitone v. City of New York*, 57 F. Supp. 3d 173, 191 (E.D.N.Y. 2014) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989)); *see also Wray*, 490 F.3d at 195 ("The failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to

---

[4] A plaintiff also can state a *Monell* claim based on a "single decision by a municipal policymaker" if that official "had final policymaking power" and the challenged action was "within that official's area of policymaking authority." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (alterations and citations omitted). "An official acts within his official policymaking capacity when he acts in accordance with the responsibility delegated [to] him under state law for making policy in that area of the municipality's business." *Id.* at 41. Although Pierre generally refers to "policies" that led to the alleged constitutional violation at Wyoming Hospital, *see* Docket Item 1 at 8-9, he has not included any allegations suggesting that Dr. Fahey "act[ed] in accordance with [a] responsibility delegated [to] him under state law," *Roe*, 542 F.3d at 41. So any *Monell* claim based on the single decision of a municipal policymaker is not viable here.

the rights of those with whom the city employees interact." (citation omitted)). "Deliberate indifference is a stringent standard of fault," so to survive a motion to dismiss, a plaintiff must plausibly allege that the municipality "fail[ed] to act when it ha[d] 'actual or constructive notice,' generally from 'a pattern of similar constitutional violations by untrained employees,' that its training program [was] 'deficient.'" *Hernandez*, 939 F.3d at 207 (alterations omitted) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Stated differently, a plaintiff must allege "that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A[n allegation] of simple or even heightened negligence will not suffice." *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (alterations and citation omitted).

Pierre has not adequately pleaded that a Wyoming County policy or custom caused his injuries under any theory of *Monell* liability. First, Pierre has not plausibly alleged that his injuries were the result of some affirmative Wyoming County policy. Pierre says that his injuries at Wyoming Hospital were the result of "customs and policies, usage, practices[,] and procedures" of Wyoming County. Docket Item 1 at 9. But "[t]o state there is a policy does not make it so." *Betts v. Shearman*, 2013 WL 311124, at *16 (S.D.N.Y. Jan. 24, 2013); *see also Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1077 (2d Cir. 2021) ("[A] general and conclusory allegation of a municipal policy or custom fails to state a plausible claim." (citation and internal quotation marks omitted)).

And Pierre has not pleaded any "factual allegations that support a plausible inference that the constitutional violation took place pursuant [] to a formal course of action officially promulgated by the municipality's governing authority." *Missel v. County*

7

*of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order) (citations omitted). For example, he has not plausibly alleged that Wyoming County had a policy of performing an inappropriate cavity search on all prisoners suspected of ingesting contraband and sent to Wyoming Hospital. Instead, Pierre offers only his own experience as proof of an alleged Wyoming County policy or custom. And that is not enough to plausibly allege that the unlawful conduct occurred because of an "affirmative municipal policy." *See id.* at 545-46 ("The allegations that [the defendant] acted pursuant to a 'policy[]' without any facts suggesting the policy's existence[] are plainly insufficient."); *see also Tuttle*, 471 U.S. at 823-24 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy[ that] can be attributed to a municipal policymaker.").

Nor has Pierre included any allegations suggesting that his injuries were the result of a widespread and persistent Wyoming County practice or the deliberate indifference of Wyoming County officials. Pierre alleges that his constitutional rights were violated at Wyoming Hospital, but he does not include any factual allegations about any other incidents that might raise an inference of "a practice so persistent and widespread that . . . supervisory authorities must have been aware" of it.[5] *See Iacovangelo*, 624 F. App'x at 13. And the Second Circuit has noted that a policy of

---

[5] Pierre generally asserts that "the wide[spread]" practice "of correction[] officer abuse of prisoners constitute[s] a municipal department practice and custom," Docket Item 1 at 8, but he does not link that alleged prison practice to Wyoming County, nor does he offer any other incidents suggesting a broader Wyoming County pattern or practice. So even if *DOCCS officers* had a "widespread practice" of abuse as Pierre alleges, that would not subject *Wyoming County* to municipal liability.

8

acquiescing in or ratifying unlawful conduct "cannot be inferred from the failure of those in charge to discipline a single [] officer for a single incident of illegality; instead, there must be more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct." *Lucente v. County of Suffolk*, 980 F.3d 284, 306 (2d Cir. 2020) (citation and internal quotation marks omitted).

To that end, courts in the Second Circuit routinely dismiss *Monell* claims based on a single instance of failing to discipline an employee after an alleged unconstitutional event. *See, e.g.*, *Santiago v. City of Rochester*, 2022 WL 856780, at *4 (W.D.N.Y. Mar. 23, 2022) (failure to discipline employee "after the incident does not, standing alone, . . . 'give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*'" (quoting *Batista*, 702 F.2d at 397)); *Askew v. Lindsey*, 2016 WL 4992641, at *5 (S.D.N.Y. Sept. 16, 2016) (collecting cases holding that a single failure to discipline "cannot give rise to an inference of deliberate indifference without further evidence of a municipal policy or practice"). Pierre has alleged no more here. So Pierre has not adequately alleged either a pattern or practice of unlawful conduct or deliberate indifference that might be sufficient to plead a viable claim.

For all those reasons, Pierre has not alleged a viable *Monell* claim against Wyoming County. Nevertheless, and in light of Pierre's *pro se* status, this Court will permit Pierre to amend his complaint to state a viable *Monell* claim. *See Shibeshi v. City Univ. of N.Y.*, 531 F. App'x 135, 136 (2d Cir. 2013) (summary order) ("[D]istrict courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend."). To state a viable claim against Wyoming County, Pierre must

9

include factual allegations sufficient to raise an inference that any constitutional violation that Pierre suffered at Wyoming Hospital occurred as a result of a Wyoming County policy or custom. In other words, Pierre "cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom"; instead, he "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Cruz v. Village of Spring Valley*, 2022 WL 428247, at *6 (S.D.N.Y. Feb. 11, 2022).

## CONCLUSION

For the reasons stated above, Pierre's motion to amend, Docket Item 30, is DENIED as moot. And Wyoming County's motion to dismiss, Docket Item 22, will be granted unless, within 45 days of the date of this order, Pierre files an amended complaint correcting the deficiencies noted above. No later than 30 days after any amended complaint is filed, Wyoming County may answer, move against, or otherwise respond to the amended complaint. If Pierre does not file an amended complaint within 45 days of the date of this order, then his claim against Wyoming County will be dismissed and the Clerk of the Court shall terminate Wyoming County as a defendant.

SO ORDERED.

Dated:   December 5, 2022
         Buffalo, New York

                                               */s/ Lawrence J. Vilardo*
                                               LAWRENCE J. VILARDO
                                               UNITED STATES DISTRICT JUDGE